## KEATLEY v. GRAND FRATERNITY.

(District Court, D. Delaware. January 24, 1912.)

No. 5.

1. INSURANCE (§ 723*)—FRATERNAL INSURANCE—APPLICATION—MISSTATEMENTS —CONCEALMENTS.

An applicant for a certificate of beneficial membership in a fraternal order who warranted every statement in the application, and agreed that in case any answer was not true, or in case of any concealment, the certificate should be void, to the question, "When and for what complaint did you last consult a physician? Give particulars with name and address of physician," truthfully answered, "Indigestion. 1909. April. Dr. Kelley. 9th & West Wil. Del." About a month previously he had consulted a physician who had treated him for cystitis. It was not shown that the applicant fraudulently omitted to state that fact, or that he had not wholly recovered from that ailment before making the application. *Held*, that the applicant made no misstatement within the meaning of the warranty or condition of the application.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** INSURANCE (§ 723*)—FRATERNAL INSURANCE—APPLICATION—QUESTIONS—ANSWERS—CONSTRUCTION.

Questions in an application for a certificate of beneficial insurance in a fraternal order, "What is your daily practice in regard to the use of wines, spirits, or malt liquors?" and "What has been your practice in the past?" must be construed together, and the questions so construed call for the applicant's daily use of intoxicants, and a statement that it had not been his daily practice to use intoxicants was not shown to be false by mere proof that he had been strongly addicted to intoxicants and indulged therein at frequent and regular intervals.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*]

**3.** INSURANCE (§ 723*)—FRATERNAL INSURANCE—APPLICATION—IRRESPONSIVE ANSWERS—EFFECT.

A fraternal order issuing a certificate subject to forfeiture for misstatements or concealments in the application may not take advantage of a merely irresponsive answer to a question in the application.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*]

**4.** INSURANCE (§ 723*)—FRATERNAL INSURANCE—MISSTATEMENTS IN APPLICATION—CONCEALMENTS—FORFEITURE.

A fraternal organization existing under the laws of Pennsylvania is governed by Pa. Act June 23, 1885 (P. L. 134), providing that no misrepresentation or untrue statement in an application made in good faith shall effect a forfeiture, unless such misrepresentation or untrue statement relates to a matter material to the risk; and a certificate may not be forfeited for misrepresentation or untrue statement in the application, though there is a warranty of the truth of the representation or statement, provided the representation or statement is made in good faith, and does not relate to a matter material to the risk.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*]

**5.** INSURANCE (§ 815*)—FRATERNAL INSURANCE—BREACH OF WARRANTY—PLEADINGS.

Where in an action on a fraternal benefit certificate a plea alleged that it was warranted that the certificate should be void if the applicant made any misstatement or concealment in the application, and that in the application the applicant in response to the question "Have you ever been subject to, or had, or now have any of the following disorders or diseases: 'Piles,' 'Bladder, gravel or kidney diseases,' answered 'No,'" and further alleged that prior to the application he had been afflicted with diabetes, cystitis and piles, all of which he knew, and that the order was misled and the certificate void, a replication consisting of a special traverse in the inducement of which it was averred that at and prior to the time of the application there was in effect a statute preventing a forfeiture unless a misrepresentation made in good faith related to some matter material to the risk and that the applicant at the time of making the application had not had any serious ailment, and the answer was made in good faith, was not objectionable as argumentative or double, and was good on demurrer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1996–1998; Dec. Dig. § 815.*]

**6.** INSURANCE (§ 815*)—FRATERNAL INSURANCE—BREACH OF WARRANTY—PLEADINGS.

Where a plea alleged that the applicant in response to the question in his application, "Has your weight recently increased or diminished; if so, why?" answered "No," and further alleged that for a long time prior to the application and continuing until that time he had been falling off in weight, which was known to him, and that by reason thereof the order

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was deceived and the certificate void, a replication consisting of a special traverse in the inducement of which it was averred that a statute prevented a forfeiture for a misrepresentation made in good faith, unless the same related to a matter material to the risk, and further averred that the applicant at the time of the application had been and was in good health, and his weight was that which it normally was at that time of the year and there had been no marked change in his weight indicating impairment of health, and that his answer was made in good faith, was good on demurrer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1996–1998; Dec. Dig. § 815.*]

At Law. Action by Mary C. Keatley against the Grand Fraternity. Demurrers to pleas sustained, and to replications overruled.

See, also, 198 Fed. 272.

John Biggs and Armon D. Chaytor, Jr., both of Wilmington, Del., for plaintiff.

Leonard E. Wales, of Wilmington, Del., for defendant.

BRADFORD, District Judge. [1] The questions now for determination arise on demurrer to certain pleas and replications in an action of covenant brought by Mary C. Keatley, widow of William J. Keatley, against The Grand Fraternity, a fraternal organization and a corporation of Pennsylvania, on a certificate of beneficial membership under seal issued by the defendant to him, to recover damages for the nonpayment of the sum of $3,000, being the amount alleged to have become payable to the plaintiff as a death benefit under the certificate of membership, and to remain wholly unpaid. It appears from the facts admitted on demurrer that Keatley made written application to the defendant June 24, 1909, for beneficial membership, and that on or about July 1, 1909, the sealed certificate of membership in question was issued to him, whereby it was certified that he was a beneficial member and entitled to all and every right, option and benefit given and granted in, to and by its constitution and by-laws, under a death certificate in the above-mentioned sum, payable to the plaintiff in manner and as prescribed in and by such constitution and by-laws, upon satisfactory proof of Keatley's death during the continuance in full force of such certificate of membership. The declaration contains three counts, and the defendant has filed ten pleas, each of which is interposed to all of the counts. The plaintiff has demurred to the third, fifth, seventh and tenth pleas. She has filed replications to the fourth and sixth pleas, in their application to the second count, and to the eighth and ninth pleas in their application to the third count. To these four replications the defendant has demurred. There has been joinder in all the demurrers. The third plea sets forth in substance, among other things, that Keatley in and by his application for membership promised and agreed for himself and his beneficiary or beneficiaries that each and every statement and answer in the application should be deemed a warranty; that in case any statement or answer should not be absolutely true in every respect, or in case of any misstatement or misleading statement, or omission or concealment of

fact by or on his behalf, the benefit certificate issued upon such application should be absolutely void; that the application contained the following question: "When, and for what complaint, did you last consult a physician? Give particulars, with name and address of physician"; that Keatley made answer to these questions as follows: "Indigestion. 1909. April. Dr. Kelly, 9th & West, Wil. Del."; that this statement or answer was not then and there absolutely true in every respect, and that Keatley did thereby omit and conceal from the defendant the fact that about one month prior to the date last mentioned he had been afflicted with and was subject to and infected with a certain other and more serious complaint, to wit, cystitis, for which he had consulted a physician and received treatment, and from which complaint, as the defendant was informed and believed and therefore averred, Keatley had not reasonably had time to recover before making his application, all of which was unknown to the defendant at the time of receiving his application and delivering the certificate of membership; and that by reason of the premises the defendant was deceived and misled and the death benefit certificate thereafter issued to him was rendered void. To the third plea there is a general demurrer. Keatley was asked when he last consulted a physician, and said it was in April, 1909. There is nothing in the plea showing or tending to show that the answer was not absolutely correct. He was asked for what complaint he consulted a physician, and he said it was indigestion. The truthfulness of this reply is wholly unchallenged by the plea. He was asked to give the name and address of such physician, and he replied Dr. Kelly, 9th & West, Wilmington, Delaware. The plea contains nothing to impeach this statement. He truthfully and directly answered all he was required to reply to. There was no misstatement or misleading statement. Nor was there any omission or concealment of fact within the meaning of the conditions of the application. He did not conceal or omit to state any fact which the questions addressed to him called for. Furthermore, while it is stated that he had previously been afflicted with cystitis, it is not alleged that he fraudulently omitted to state the fact, nor is it even stated that Keatley had not wholly recovered from that ailment before making his application. It is merely alleged that as the defendant is informed and believes, and therefore avers, Keatley "had not reasonably had time to recover." Keatley in truthfully and directly answering the questions put to him observed good faith and fully performed his duty. To hold otherwise would be practically to decide that although the defendant was at liberty fully to interrogate him touching all matters material to the risk and had formulated in the application the questions it desired answered, and although he answered in good faith and truthfully all questions addressed to him, yet the death benefit should be forfeited if he failed to mention some matters that in the judgment, not of himself, but of physicians or experts, might have a bearing upon the risk assumed. Such surely is not law. In Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 72 Fed. 413, 435, 19 C. C. A. 286, 308, 38 L. R. A. 33, 70, the circuit court of appeals for the sixth circuit well said:

"The subject of life insurance is always present for physical examination by medical experts of the insurer, who often acquire, by lung and heart tests, and by chemical analysis of bodily excretions, a more intimate knowledge of the bodily condition of the applicant than he has himself. Then, too, the practice has grown of requiring the applicant for both fire and life insurance to answer a great many questions carefully adapted to elicit facts which the insurer deems of importance in estimating the risk. * * * When the applicant has fully and truthfully answered all these questions, he may rightfully assume that the range of the examination has covered all matters within ordinary human experience deemed material by the insurer, and that he is not required to rack his memory for circumstances of possible materiality, not inquired about, and to volunteer them. He can only be said to fail in his duty to the insurer when he withholds from him some fact which, though not made the subject of inquiry, he nevertheless believes to be material to the risk, and actually is so, for fear it would induce a rejection of the risk, or, what is the same thing, with fraudulent intent."

The demurrer to this plea must be sustained.

[2, 3] The fifth plea sets forth in substance, among other things, that Keatley's application for membership contained a promise, agreement and warranty on his part substantially the same as alleged in the third plea; that in the application he also declared that "his personal habits were clearly, distinctly and truthfully set forth in the questions and answers therein contained"; that the application contained the following questions: "What is your daily practice in regard to the use of wines, spirits or malt liquors?" "What has been your practice in the past?"; that Keatley said "No" to each of these questions; that he for a long time prior to and at the time of making the application had been and was strongly addicted to the use of wines, spirits or malt liquors and indulged therein at frequent and regular intervals, all of which was unknown to the defendant at the time of receiving his application and delivering the certificate of membership, and that by reason of his above "answers" and "omission and concealment of fact" the defendant was deceived and misled and the death benefit certificate thereafter issued to him was rendered void. To the fifth plea there is a general demurrer. The two questions addressed to Keatley were, "What is your daily practice in regard to the use of wines, spirits or malt liquors?" and "What has been your practice in the past?" The latter question standing alone is wholly vague and indefinite; for the "practice in the past" would apply as well to tobacco as any other subject or subjects. The two questions must be read together in order to render the latter intelligible; and when this is done the latter on a reasonable construction may be read "What has been your daily practice in the past in regard to the use of wines, spirits or malt liquors?" It is obviously necessary to limit the "practice in the past" to wines, spirits or malt liquors through the adoption from the preceding question of the subject of the practice; and it is a natural and reasonable construction also to adopt the word "daily." Thus construed the inquiry was "What is and what in the past has been your daily practice in regard to the use of wines," etc. The latter question being fairly susceptible of two constructions, namely, that above mentioned, and one which would relate, not to daily, but only to general practice,

and the language being, not that of Keatley, but of the defendant, any doubt which may attach to the subject should, according to an elementary canon of construction, be resolved against the defendant and in favor of Keatley. He having thus been asked as to his then and previous daily practice in regard to the use of wines, etc., said "No" to each inquiry. I should have much difficulty in reaching a conclusion that "No" was an answer to either of the questions. If it was not, it cannot be said to be an untrue answer, nor an untrue statement, for that monosyllable seems to have no intelligible connection with either of the questions. But "No" was either responsive or irresponsive to the two questions. If it was irresponsive it is well settled that the defendant cannot now take advantage of the want of an answer to these questions or either of them. In Phœnix Life Ins. Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644, the court through Mr. Justice Gray said:

"Where upon the face of the application a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial."

This proposition has been repeatedly recognized and enforced and is not open to question. If, then, "No" was not an answer to either of the questions no advantage can be derived by the defendant from the mere fact that they remained unanswered. If, on the other hand, "No" be treated as responsive to those questions, Keatley in making his application in substance averred that it was not then and had not in the past been his daily practice to use vinous, spirituous or malt liquors. There is nothing in the plea to show that such an averment was or would have been untrue. It does not allege that it was then or theretofore his daily practice so to indulge. It does state he then was and theretofore had been strongly addicted to the use of wines, spirits or malt liquors, and indulged therein at frequent and regular intervals. But this is very different from a statement of daily practice, as to which alone he was interrogated in the two questions. Having been asked only as to his daily practice, and having, on the assumption that "No" was responsive, fully answered the questions, there was certainly, in the absence of fraud, no "omission or concealment of fact" in not volunteering something he had not been asked about. Further, the plea does not allege that he fraudulently or wrongfully omitted to state, or concealed, that he was and had been strongly addicted to the use of wines, spirits or malt liquors and indulged therein at frequent and regular intervals, or even that he drank to excess, or how often he drank, or that his indulgence in wines, spirits or malt liquors had injuriously affected his health, or in any manner was material to the insurance risk. I can perceive no ground on which the fifth plea can be supported, and therefore the demurrer to that plea must be sustained.

The seventh plea is substantially similar to the third, and the same considerations which require the demurrer to that plea to be sustained necessitate a like disposition of the demurrer to the seventh plea.

So, the tenth plea is substantially similar to the fifth, and the demurrer to it must be sustained for the same reasons.

[4,5] As before stated, the defendant has demurred to the replications to the fourth and sixth pleas in their application to the second count, and to the replications to the eighth and ninth pleas in their application to the third count. The fourth plea sets forth in substance, among other things, that it was expressly stipulated and warranted that the certificate of membership issued and delivered to Keatley should be absolutely void if he made any statement or answer in his application which was not absolutely true in every respect or in case there had been any misstatement or misleading statement or omission or concealment of fact by or on behalf of Keatley; that in the application for membership Keatley in response to the question, "Have you ever been subject to or had, or now have, any of the following disorders or diseases? (Answer 'Yes' or 'No' to each), inter alia, 'Piles,' 'Bladder, gravel or kidney disease?' answered 'No' to each;" that Keatley prior to the date of the application had been afflicted with and was subject to and infected with diabetes, cystitis and piles, all of which he knew, but which was unknown to and not discovered by the defendant at and prior to the time of receiving the application and of executing and delivering the certificate of membership; and that the defendant was misled and deceived in the premises whereby the certificate became and was absolutely void. The replication to this plea consists of a special traverse in the inducement of which it is averred that at and prior to the time Keatley made his application for membership there was in full force and effect a certain Pennsylvania statute, approved June 23, 1885 (P. L. 134), which provided, among other things, as follows:

"That hereafter whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk."

The replication further avers that at the time of making the application Keatley "had not nor had he had any serious disease, illness or ailment, or any disease, illness or ailment that was other than trivial and temporary in its nature and which did not affect his general health or the disclosure of which was material to the risk of insuring his life"; and that the answers which he made to the questions mentioned in the plea "were in good faith and without intention to mislead or deceive, without this that," etc. That the Pennsylvania statute is applicable to cases like the present there can be no question. And under its provisions there is no forfeiture by reason of a misrepresentation or untrue statement in an application for life insurance, even where there is a warranty of the truth of the representation or statement, if it be made "in good faith" and does not "relate to some matter material to the risk." The defendant assigns as grounds of demurrer argumentativeness, duplicity and the allegation of conclusions

of law. The objection of argumentativeness is palpably unsound, for the distinguishing feature of the inducement in a special traverse is precisely that quality. It is a qualified or argumentative denial of the allegations in the preceding pleading, the absque hoc clause, containing a direct traverse, being added in order to cure what would be objectionable argumentativeness in the inducement, if taken alone. Nor is the replication justly chargeable with duplicity. The fact that the plaintiff not only alleges that Keatley's answers were made in good faith but denies that he had any disease, illness or ailment, material to the insurance risk, cannot constitute duplicity. Whether Keatley did or did not observe good faith in giving the answers in question, and whether he had or had not any disease, illness or ailment material to the risk are not questions of law, but of fact for a jury. The position that the replication is objectionable for the allegation of a question of law is clearly untenable. The demurrer to the replication in question must, therefore, be overruled.

[6] The sixth plea alleges in substance, among other things, that Keatley in response to the question contained in his application for membership, "Has your weight recently increased or diminished? If so, why? " answered "No"; that in fact for a long time prior to the making of such application and continuing until such application Keatley had been falling off in weight, which was known to him but not known by the defendant at the time of receiving his application and of executing and delivering to him the certificate of membership; and that by reason of the premises the defendant was deceived and misled and the death benefit certificate issued to Keatley became void. The replication to this plea also consists of a special traverse in the inducement of which the above-mentioned Pennsylvania statute is set forth. It further avers that Keatley at the time of making his application had been and was in good health and his weight was "that which it normally was at that time of the year, and there was and had been no material or marked change in his weight, and no change in his weight which indicated an impairment of his health, and no change in his weight that was material to the risk of insuring his life," and his answers "to the questions in the said plea mentioned were in good faith and without intention to mislead or deceive, without this that" etc. The same principles and rules of pleading apply to this replication as to that to the fourth plea. It requires no independent discussion. The demurrer to the replication must be overruled. The replications to the eighth and ninth pleas present questions substantially similar to those raised by the replications to the fourth and sixth pleas respectively, and it is unnecessary to treat them separately from the latter. The demurrers to the replications to both the eighth and ninth pleas must be overruled.